IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHALON MCNEAL, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHICAGO PUBLIC SCHOOLS, and UKG, INC.<br><br>Defendants. | Case No. _____________<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shalon McNeal ("Ms. McNeal" or "Plaintiff"), on behalf of herself and all others similarly situated (the "Class" or "Class Members"), brings this action against Defendants Ultimate Kronos Group, Inc. ("UKG") and Chicago Public Schools ("CPS") (collectively, "Defendants") to obtain damages and restitution for the Class. Plaintiff alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1. Plaintiff and Class Members are hourly employees who were not paid by Defendants in a timely fashion the full amount of wages to which they are entitled for all their work.

2. This class action seeks to redress Defendants' unlawful withholding of wages for Plaintiff and Class Members as a result of a data breach on or around December 11, 2021 ("Data Breach" or "Kronos Outage"). On that date, and possibly on others, Defendants' inadequate security measures allowed unauthorized individuals to access and render unusable a workforce management software application Defendants used to process payroll and store data that contained the personal identifying information ("PII") of Plaintiff and other individuals.

3. This outage led to problems in time-keeping and payroll throughout Defendants' system.

4. As a result, CPS employees who were not exempt from overtime under federal and state law were not paid owed minimum wages and/or for all overtime hours worked and/or were not paid owed minimum wages or their proper overtime premium on time, if at all, for all regular hours and overtime hours worked during and after the Kronos Outage.

5. Defendants could have easily implemented a system to accurately record time and properly pay non-exempt employees until issues related to the outage were resolved. Instead, Defendants pushed the cost of the Kronos Outage on the most economically vulnerable people in their workforce.

6. Plaintiff brings this lawsuit on behalf of herself and Class Members to recover unpaid minimum and overtime wages and other damages owed by Defendants to Plaintiff and Class Members who were the ultimate victims of not just the Data Breach but CPS' own decision to make its non-exempt employees bear the economic burden for the outage.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant Chicago Public Schools because it maintains a headquarter in Illinois and has its principal place of business in Illinois.

8. This Court has personal jurisdiction over Defendant UKG Inc. because it has had systematic and continuous contact with the State of Illinois. UKG is registered to do business in Illinois with the Illinois Secretary of State. UKG contracts with many businesses in Illinois to provide human resources services, including payroll services.

9. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000,

exclusive of interests and costs, there are more than 100 class members, and Plaintiff and one or more members of the classes are residents of a different state from a defendant.

10. Supplemental jurisdiction is proper for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper pursuant to 28 U.S.C. § 1391 because, during all times relevant to the employment relationship, Plaintiff performed work in this district and is a resident of this district. Defendants are engaged in business in this district.

**PARTIES**

12. Defendant Chicago Public Schools is an Illinois municipality that provides educational services to the public through the Board of Education of The City of Chicago.

13. CPS is an "enterprise" as defined by 3(r)(2)(A) of the FLSA and is an enterprise engaged in commerce or the production of goods for commerce within the meaning of Section 3 (s)(1)(B), 29 U.S.C. § 203(s)(1)(B).

14. During all relevant times, CPS acted directly or indirectly in the employer's interest in relation to the employee Plaintiff and Class Members and, therefore, as defined under both the federal and state statutes relied upon, is an "employer."

15. Defendant UKG Inc. is a Delaware corporation with its principal place of business at 2000 Ultimate Way, Weston, FL 33326.

16. Plaintiff Shalon McNeal is a citizen of Illinois and a resident of Chicago, IL.

17. On one or more weeks after December 11, 2021, Plaintiff was not paid the full amount of wages due and received either late or incorrect payments.

18. Plaintiff is an employee of Defendant Chicago Public Schools and works as a Special Education Classroom Assistant, supporting and supervising diverse learning students. As

an employee performing duties for an enterprise engaged in commerce, the named Plaintiff was also engaged in commerce as defined by the FLSA.

## FACTUAL BACKGROUND

### A. Plaintiff's Status As An Employee

19. During the relevant time period, Plaintiff was employed by CPS as a special education classroom assistant at the Daniel S. Wentworth Elementary School in the Chicago Public School District.

20. During the relevant time period, Chicago Public Schools employed hourly employees in numerous positions throughout the public school system.

21. Plaintiff and Class Members provide vital support and assistance throughout the public school community. Every day she and other Class Members dedicate their time to caring for students while providing them with a meaningful learning environment.

22. Plaintiff and Class Members were paid on an hourly basis.

23. Defendants regularly scheduled Plaintiff and Class Members' work hours.

24. Plaintiff and Class Members regularly reported their hours to CPS, as instructed by CPS.

25. Plaintiff and Class Members provided their PII to Defendants at their request, including names, addresses, employment IDs, and social security numbers.

26. CPS regularly received reports indicating the hours worked by Plaintiff and Class Members.

27. CPS failed to pay Plaintiff the full amount of wages to which she is entitled for all of her work time in a timely fashion.

28. Plaintiff did not furnish her work gratuitously.

29. Plaintiff worked with the expectation that she would be paid in full for all hours worked in a timely fashion.

30. CPS did not expect Plaintiff to perform any work for Defendants gratuitously.

31. Defendants set compensation policies for Plaintiff and the Class. Defendants were jointly responsible for ensuring that Plaintiff and the Class were properly paid each pay period. Defendants were also jointly responsible for the unlawful withholding of payments subsequent to the Data Breach.

**B. UKG Provides Timekeeping and Payroll Services To Plaintiff And The Class**

32. UKG Inc. (Ultimate Kronos Group) is a workforce management software company that provides companies nationwide and internationally with human resource services, including timekeeping and payroll services. Among the many products and services it offers, UKG provides software known as the "Kronos Private Cloud" and "UKG Workforce Central," which are time-keeping and payroll services.

33. UKG was formed due to a $22 billion merger in 2020 between Ultimate Software and Kronos. UKG has 13,000 employees across the globe, and amidst a global pandemic, it generated over $3 billion in revenue in its first year of business. It is one of the largest cloud computing companies in the world and a leading global provider of workforce management services.

34. UKG provides timekeeping and payroll services to a broad range of clients, including corporate and public organizations, such as Tesla, Whole Foods, and FedEx, and many private and public hospitals, healthcare organizations, schools, and many more.

35. UKG entered into payroll service agreements with CPS. UKG operated and provided workforce and management software, Kronos Private Cloud, by which CPS maintained

employees' personal information and time-keeping records and managed employee payroll. Records of the payroll agreement between UKG and CPS, if any, should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings.

36. UKG's website indicates that its services, among other things, allow its customers to ensure accurate, on-time payments and to quickly generate payroll documents, such as paychecks and direct deposit files. As UKG's website states, "I can't imagine there being a better solution than UKG."[1]

37. UKG provides CPS with "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."[2]

38. Plaintiff and Class Members were paid on an hourly basis.

39. Plaintiff and Class Members used UKG's timekeeping system to track their time worked, as requested by their employers. CPS used UKG's services to maintain time records and distribute payroll.

40. UKG was acting in the interest of CPS in relation to Plaintiff, Class Members, and all employees by providing this workforce and management software.

41. Defendants were jointly responsible for ensuring that Plaintiff and the Class were properly paid each pay period, and for the unlawful withholding of payments subsequent to the Kronos Outage.

---

[1] *Users Evaluate UKG HCM*, https://www.ukg.com/resources/product-info/users-evaluate-ukg-hcm (last visited November 17, 2023).

[2] *Why UKG for Workforce Management?* UKG WORKFORCE MANAGEMENT, https://www.ukg.com/solutions/workforce-management#why (last visited November 17, 2023).

### C. Kronos Outage Rendered Unusable Its Timekeeping And Payroll Services.

42. UKG provides its time-keeping and payroll services to many companies and organizations operating in Illinois, including CPS.

43. On December 13, 2021, UKG posted an announcement regarding the data breach on its website. The announcement confirmed a ransomware attack on UKG's Kronos Private Cloud. The Kronos Private Cloud includes, among other services, UKG's Workforce Central and Banking Scheduling Solutions. UKG confirmed that Kronos Private Cloud solutions were offline because of the attack.

44. UKG advises its customers "that it may take up to several weeks to restore system availability" and that, as such, the company "strongly recommends that [customers] evaluate and implement alternative business continuity protocols related to the affected UKG solutions."[3]

45. On January 22, 2022, UKG posted an update to its website stating that "[b]etween January 4 and January 22, **<u>all</u>** affected customers in the Kronos Private Cloud were restored with safe and secure access to their core time, scheduling, and HR/payroll capabilities. We are now focused on the restoration of supplemental features and non-production environments and are extraordinarily grateful for the patience and partnership our customers have shown."[4]

46. UKG's announcement failed to clarify that UKG's payroll services were still **<u>not</u>** fully operational. As a result, many CPS employees' paychecks continued to be paid late, inaccurately, and/or not at all.

---

[3] UKG Workforce Central – Leo Daley, *Communications sent to impacted Kronos Private Cloud (KPC) customers beginning December, 13 at 12:45AM ET*, UKG, https://community.kronos.com/s/feed/0D54M00004wJKHiSAO?language=en_US (last visited Mar. 4, 2022).

[4] *Status Update as of Jan 22, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022) (emphasis in original).

47. UKG confirmed as such on February 11, 2022, when it announced that only the first phase of the restoration process was complete and that many of Kronos' Private Cloud applications, such as Citrix, Workforce Analytics, and non-production environments, were still offline.[5]

48. UKG could have prevented the data breach by properly utilizing best practices. Federal agencies have issued recommendations and guidelines to help minimize the risks of a data breach for businesses holding sensitive data. For example, the Federal Trade Commission ("FTC") has issued numerous guides for businesses highlighting the importance of reasonable data security practices, which should be factored into all business-related decision-making.[6]

49. UKG was fully aware of its obligations to implement and use reasonable measures to secure its workforce management systems. However, it failed to comply with these basic recommendations and guidelines that would have prevented the interruption of UKG's payroll services.

50. UKG's failure to secure its workforce management systems is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data. Experts studying cyber security routinely identify companies such as UKG that collect, process, and store massive amounts of data on cloud-based systems as being particularly vulnerable to cyberattacks because of the value of the PII that they collect and maintain. Accordingly, UKG knew or should have known it was a prime target for hackers.

---

[5] *Status Update as of Feb 11, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).

[6] FTC, *Start With Security: A Guide for Businesses*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited June 15, 2023).

51. UKG's knowledge that it was a target of hackers is further underscored by the massive number of ransomware attacks on payroll companies such as UKG.

52. For example, in March 2021, PrismHR, a payroll company that provides over 80,000 businesses with payroll, benefits, and human resource services, suffered a ransomware attack that disrupted many of its services.[7]

53. Despite knowing the prevalence of data breaches, UKG failed to prioritize data security by adopting reasonable measures to prevent and detect unauthorized access to its highly sensitive systems and database. UKG has the resources to prevent a breach but neglected to adequately invest in data security, despite the growing number of well-publicized breaches. UKG failed to undertake adequate analyses and testing of its systems, training of its personnel, and other data security measures to ensure vulnerabilities were avoided or remedied.

**D. Plaintiff And Class Members Were Not Paid Proper Wages As A Direct Result of Kronos Outage.**

54. UKG, through Kronos Private Cloud, maintained control over employee records and the rate and method of payment. As a result of the Data Breach, CPS could not operate Kronos Private Cloud and conduct its payroll services.

55. As a result of the Data Breach, numerous employers, including CPS, who use Kronos Private Cloud for workforce management to manage employee schedules, track hours, and determine payment, were unable to do so.[8]

56. Following the Data Breach, CPS instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following that date was set arbitrarily to a pay

---

[7] *Payroll/HR Giant PrismHR Hit by Ransomware?*, KREBS ON SECURITY, (Mar, 2, 2021) https://krebsonsecurity.com/2021/03/payroll-hr-giant-prismhr-hit-by-ransomware/.

[8] Becky Sullivan, *Hackers disrupt payroll for thousands of employers – including hospitals*, NPR (Jan. 15, 2022), https://www.npr.org/2022/01/15/1072846933/kronos-hack-lawsuits.

period before the freeze, with limited exception.

57. As a result, Plaintiff and Class Members received payment for far fewer hours than they worked, and some were not paid at all.

58. Plaintiff and Class Members, at all times pertinent to the cause of action, were employed by Chicago Public Schools, said employment is integral and indispensable to Defendant's operation of its public school system.

59. Defendants failed to pay Plaintiff and Class Members the total amount of wages to which she was entitled for all of her work time in a timely fashion.

60. Defendants set compensation policies for Plaintiff and the Class. Defendants CPS and UKG were jointly responsible for ensuring that Plaintiff and the Class were properly paid each pay period.

61. Defendants CPS and UKG were also jointly responsible for the unlawful withholding of payments subsequent to the Data Breach. Following the Data Breach, CPS and UKG could not operate Kronos Private Cloud and conduct its payroll services.

62. Plaintiff and Class Members were not paid for the full amount of time they worked in one or more pay periods, or in successive pay periods, from approximately December 11, 2021 onward.

63. Plaintiff, like all Class Members, has lost time and expenses from having to mitigate the consequences of the delay in payment of her paychecks.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings Causes of Action I as an "opt-in" collective action on behalf of Plaintiff and similarly situated employees pursuant to 29 U.S.C. § 216(b).

65. Plaintiff, individually and on behalf of similarly situated employees, seek relief on a collective basis challenging Defendants' practice of failing to pay hourly employees the full amount of wage to which they are entitled for all of their work in a timely fashion.

66. The number and identity of other Plaintiffs yet to opt-in may be ascertained from CPS' records, and potential class members may be notified of the pendency of this action via email.

67. Plaintiff brings this action as a collective action on behalf of themselves and all hourly employees of Chicago Public Schools who were employed during the UKG Outage ("Collective").

68. Plaintiff and all of the hourly employees are similarly situated in that:

a. Their work has been controlled by CPS;

b. They have worked as employees of CPS;

c. They have been economically dependent on CPS;

d. They regularly reported their hours to CPS;

e. CPS regularly received reports indicating the hours worked by Plaintiff and hourly employees;

f. On or about December 13, 2021, CPS instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following the date was set arbitrarily to the period that pre-dated freeze, with a limited exception for lump sum partial payments of amounts due;

g. CPS compensated Plaintiff and many of the collective class members through similar wage rates; and

h. CPS failed and refused to pay them their full amount of wages.

69. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings this action against Defendants as a class action on behalf of a Class of all hourly employees of CPS who were employed during the UKG Outage ("Class").

70. Plaintiff reserves the right to amend the above definition(s) or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

71. Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendants.

72. This action satisfies the requirements for a class action under F.R.C.P. 23(a)(1) - (a)(4), including requirements of numerosity, commonality, typicality, and adequacy of representation.

73. This action satisfies the requirements for a class action under Rule 23(a)(1). Plaintiff believes that the proposed Class, as described above, consists of more than 40,000 employees who can be identified through Defendants' records. However, the exact number and identities of Class Members are currently unknown. The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

74. This action satisfies the requirements for a class action under Rule 23(a)(2). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members. Common questions include, but are not limited to, the following:

a. Whether CPS employed Plaintiff and Class Members within the meaning of the Illinois Labor Law;

b. What are and were the policies, practices, procedures, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c. Whether Defendants accurately tracked the hours worked by Plaintiff and Class Members during the relevant time period;

d. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime compensation;

e. Whether Defendants properly compensated Plaintiff and Class Members in a timely fashion;

f. Whether Defendants owed a duty to Plaintiff and Class Members to secure and safeguard their payroll systems;

g. Whether Defendants failed to use reasonable care and reasonable methods to secure and safeguard their payroll systems;

h. Whether Defendants properly implemented security measures as required by industry standards to prevent interruption of their payroll systems;

i. Whether Plaintiff and members of the Class were injured and suffered damages and ascertainable losses as a result of Defendants' actions or failure to act, including but not limited to loss of wages;

j. Whether Defendants engaged in active misfeasance and misconduct alleged herein;

k. Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

l. Whether Defendants' failure to provide adequate security proximately caused Plaintiff and Class Members' injuries; and

m. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

75. This action satisfies the requirements for a class action under Rule 23(a)(3). The claims asserted by Plaintiff are typical of the claims of the members of the Class she seeks to represent because, among other things, Plaintiff and Class Members sustained similar injuries as a result of Defendants' uniform wrongful conduct; Defendants owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by Defendants.

76. This action satisfies the requirements for a class action under Rule 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests conflicting with the interests of Class Members. Plaintiff's Counsel are competent and experienced in data breach and wage and hour class action litigation.

77. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the hundreds or thousands, and individual joinder is impracticable. Trial of Plaintiff's and Class Members' claims is manageable. Unless the Class is certified, Defendants will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

79. Prosecuting separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendants.

80. Defendants' wrongful actions, inactions, and omissions generally apply to the Class as a whole, and, therefore, Plaintiff also seeks equitable remedies for the Class.

81. Defendants' systemic policies and practices also make injunctive relief for the Class appropriate.

82. Absent a class action, Defendants will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Against Defendant CPS On Behalf Of Plaintiff And The Collective
### (Fair Labor Standards Act, 29 U.S.C. §201 et seq.)

83. Plaintiff, on behalf of herself and the CPS Collective, realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

84. At all relevant times, CPS has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times, Defendant has employed and/or continues to employ "employee[s]," including Plaintiff and each of the prospective CPS Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

85. The FLSA requires CPS, as a covered employer, to compensate all non-exempt employees for all hours worked and to compensate all non-exempt employees at a rate of not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a work week.

86. Plaintiff and all CPS Collective Members are entitled to compensation for all hours worked.

87. Plaintiff and all CPS Collective Members are entitled to be paid overtime compensation for all overtime hours worked.

88. At all relevant times, CPS, pursuant to its policies and practices, failed and refused to compensate Plaintiff and the CPS Collective Members for work performed in a timely fashion.

89. At all relevant times, CPS, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiff and the CPS Collective Members.

90. At all relevant times, work performed by Defendant's non-exempt hourly employees, including Plaintiff and the CPS Collective Members, was and continues to be required or permitted by CPS, for the benefit of CPS, and is directly related to such employees' principal employment with CPS, and is an integral and indispensable part of such employees' employment with CPS.

91. CPS violated and continues to violate the FLSA, 29 U.S.C. §201 et seq., including 29 U.S.C. §§207(a)(1) and 215(a), by failing to pay Plaintiff and CPS Collective Members for all hours worked and by failing to pay Plaintiff and CPS Collective Members at least one-and-a-half times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. §201 et seq. 67.

92. The FLSA also imposes specific employment record-keeping requirements, including accurate records of all hours worked. By failing to record, report, and/or preserve records of hours worked by Plaintiff and the prospective CPS Collective Members, CPS has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine

their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §201 et seq., including 29 U.S.C. §§211(c) and 215(a).

93. As a result of CPS' violations of law, Plaintiff and CPS Collective Members are entitled to recover from CPS the amount of their unpaid minimum wages and overtime compensation, an additional equal amount as liquidated damages, as provided by the FLSA, 29 U.S.C. §216(b), prejudgment interest, attorneys' fees, litigation expenses, and court costs, pursuant to 29 U.S.C. §216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Against Defendant CPS On Behalf Of Plaintiff And The Class (Illinois Wage Laws, 820 Ill. Comp. Stat. §105/1, et seq., & §115/1, et seq., and 56 Ill. Admin. Code §§210.100, et seq. & 300.440, et seq)

94. Plaintiff, on behalf of herself and all members of the CPS Class, realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

95. The foregoing conduct, as alleged, violates Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/1, et seq. and the regulations promulgated thereunder, 56 Ill. Admin. Code §210.100, et seq., and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. §115/1, et seq., and the regulations promulgated thereunder, 56 Ill. Admin. Code §300.440 (collectively, "Illinois Wage Laws") as alleged, violates (collectively, "Illinois Wage Laws").

96. At all relevant times, CPS has been and continues to be an "employer" within the meaning of Illinois Wage Laws. At all relevant times, CPS has employed, and/or continues to employ, "employee[s]," including Plaintiff and each of the members of the CPS Class, within the meaning of the Illinois Wage Laws.

97. Illinois Wage Laws require an employer, such as CPS, to pay proper compensation to all non-exempt employees for each hour worked, including overtime pay for hours in excess of

forty in a week. The Plaintiff and CPS Class Members are non-exempt employees entitled to be paid proper compensation for all hours worked, including overtime hours worked.

98. At all relevant times, CPS failed to properly compensate Plaintiff and the CPS Class Members for all hours worked, including hours in excess of forty hours per week.

99. As a result of CPS' failure to pay wages earned and due, and its decision to withhold wages earned and due to Plaintiff and the CPS Class Members—at their hour rate (for hours under forty in a week) or on and one-half times their hourly rate (for hours over forty in a week)—Defendant has violated, and continues to violate, the Illinois Wage Law.

100. As a result of CPS' failure to record, credit, and furnish to Plaintiff and CPS Class Members their respective wage and hour records showing all wages earned and due for all work performed, Defendant has failed to make, keep, preserve, and furnish such records in violation of Illinois Administrative Code §210.770.

101. Plaintiff, on behalf of herself and the CPS Class Members, seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by CPS, as provided by 820 Ill. Comp. Stat. §105/12(a).

102. Plaintiff, on behalf of herself and the CPS Class Members, seeks the amount of their underpayments based on CPS' failure to pay regular wage for all hours worked and one and one-half times the regular rate of pay for work performed in excess of forty hours, as provided by 820 Ill. Comp. Stat. §105/4a; punitive damages as provided for by 820 Ill. Comp. Stat. §105/12(a); damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, as provided by 820 Ill. Comp. Stat. §115/14(a); and such other legal and equitable relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

**Against All Defendants On Behalf Plaintiff And The Class**
**(Breach of Contract)**

103. Plaintiff realleges and incorporates by reference all paragraphs above as if fully set forth herein.

104. Plaintiff and Class Members entered an employment agreement with Defendant CPS.

105. The basis of the agreement between Plaintiff and Defendant CPS consisted of providing employment services to Defendant in exchange for payment of wages.

106. At all relevant times, Plaintiff and Class Members performed their job duties as required by the employment agreement between them and Defendants CPS.

107. Following the ransomware attack, Defendant CPS instituted a payment freeze and failed to pay Plaintiff and Class Members in full for all hours worked in a timely fashion, in breach of their responsibilities under the employment contract to compensate Plaintiff and Class Members for all hours worked.

108. Plaintiff and Class Members were not paid for the full amount of time they worked in one or more pay periods, or in successive pay periods, from approximately December 11, 2021 onward.

109. Plaintiff and Class Members have lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

110. Plaintiff and Class Members were third-party beneficiaries of a payroll agreement between Defendant CPS and Defendant UKG.

111. Defendant UKG entered into a payroll service agreement with Defendant CPS. UKG operated and provided a workforce and management software, Kronos Private Cloud, by

which CPS maintained employees' personal information and time-keeping records and distributed its payroll to employees. Records of the payroll agreement between UKG and CPS, if any, should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings.

112. UKG's website indicates that its services, among other things, provide managers "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."[9]

113. Plaintiff and the Class were implied third-party beneficiaries of the payroll contract between Defendant CPS and Defendant UKG to access their time records and payroll documents and to receive accurate, on-time payments.

114. Defendants UKG breached these agreements by taking Kronos Private Cloud offline, failing to maintain accurate time records, and failing to distribute accurate paychecks to Plaintiff and Class Members.

115. Due to these breaches, Plaintiff and Class Members have suffered injuries and damages, including but not limited to, lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

## FOURTH CAUSE OF ACTION

**Against All Defendants On Behalf The Class**
**(Unjust Enrichment – In The Alternative)**

116. This claim is brought in the alternative to the third cause of action.

117. Plaintiff realleges and incorporates by reference all paragraphs above as if fully set forth herein.

---

[9] *Why UKG for Workforce Management?* UKG WORKFORCE MANAGEMENT, https://www.ukg.com/solutions/workforce-management#why (last visited August 7, 2023).

118. Plaintiff and Class Members provided employment services to CPS and thereby conferred a benefit on CP through their willingness to work, and CPS benefited from such work.

119. CPS inequitably retained the benefits of Plaintiff and Class Members' work without properly compensating Plaintiff and Class Members. As a result, CPS has been unjustly enriched.

120. As described above, Plaintiff and Class Members provided their PII to Defendants, on the mistaken belief that Defendants would ensure that their wages were properly and timely paid and that Defendants complied with their duty to safeguard and protect their PII.

121. Defendant UKG was aware that Plaintiff and Class Members expected that all of their wages would be properly and timely paid and that their PII would be kept secure. This expectation arises in part from UKG's own messaging, including its privacy policy and its representation that UKG is highly effective and that it is not possible to "imagine there being a better [payroll and HR] solution than UKG." And based on this expectation and trust, UKG knew that Plaintiff and Class Members would not have disclosed their PII to it and would have chosen a different provider for services.

122. As a result of the Data Breach, Plaintiff and Class Members did not receive the proper wages in a timely fashion, suffered injuries and damages, including but not limited to, lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks, and the continued risk to their PII, which remains in UKG's possession.

123. As a result, UKG was unjustly enriched by retaining the PII and charging and collecting for its services to the detriment of Plaintiff and Class Members.

124. It would be inequitable, unfair, and unjust for Defendants to retain these wrongfully obtained benefits. Defendants' retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

125. Each Plaintiff and member of the proposed Class is entitled to restitution and non-restitutionary disgorgement in the amount by which Defendant was unjustly enriched, to be determined at trial. Plaintiff and Class Members seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that the Court grant relief against Defendant as follows:

A. Certifying this collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure and requiring notice thereto to be paid by Defendants;

B. Appointing Plaintiff and her counsel to represent the Class;

C. Adjudging and decreeing that Defendants have engaged in the conduct alleged herein;

D. For compensatory and general damages according to proof of certain causes of action;

E. For reimbursement, restitution, and disgorgement on certain causes of action;

F. For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

G. For costs of the proceedings herein;

H. For an Order awarding Plaintiff and the Class reasonable attorney's fees and expenses for the costs of this suit;

I. Trial by jury; and

J. For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

Dated: 12/28/23

Respectfully Submitted,

**GORDON LAW OFFICES, LTD.**

By: __/s/ Richard R. Gordon_____________
Richard R. Gordon
111 West Washington Street, Suite 1240
Chicago, IL 60602
Tel: (312) 332-5200
rrg@gordonlawchicago.com

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: *__/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson (*pro hac vice* application forthcoming)
Panning Cui (*pro hac vice* application forthcoming)
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
jfrei-pearson@fbfglaw.com
pcui@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Classes*